IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TRACY NEWMAN,                      )
                                   )
          Plaintiff,               )
                                   )
     v.                            )    1:21CV3
                                   )
AMERICAN HONDA FINANCE CORP.,      )
                                   )
          Defendant.[1]            )

**MEMORANDUM OPINION AND ORDER**

This case comes before the Court on "Defendant American Honda Finance Corporation's Motion for Judgment on the Pleadings" (Docket Entry 16 (the "Motion")). (See Docket Entry 14 (referring case to undersigned United States Magistrate Judge for disposition on consent of parties, pursuant to 28 U.S.C. § 636(c)).) For the reasons that follow, the Court will deny the Motion.

**BACKGROUND**

Tracy Newman (the "Plaintiff") initiated this action against American Honda Finance Corporation ("Honda"), alleging that Honda "report[ed] inaccurate payment status information about Plaintiff's Honda account" in violation of the Fair Credit Reporting Act ("FCRA"). (Docket Entry 1 (the "Complaint"), ¶ 1.)

In particular, according to the Complaint:

---

[1] Tracy Newman originally named as a Defendant "Trans Union, LLC ('TransUnion')" (Docket Entry 1 at 1), but later settled that claim (see Docket Entry 15). Those parties thereafter stipulated to the dismissal with prejudice of any claims against TransUnion (see Docket Entry 21), leaving American Honda Finance Corporation as the sole defendant in this action.

While Plaintiff's Honda account remained "closed with a $0 balance, [Honda] continued to report that the current payment status of the account was 60 days late." (Id.) "This reporting was materially misleading because it conveyed that Plaintiff was currently delinquent on payments, when that was not the case." (Id., ¶ 13.) "Honda qualifies as a 'furnisher' of credit information under [] FCRA" (id., ¶ 4), such that it possesses an obligation, "upon receiving a consumer's dispute [regarding the accuracy of credit information], to conduct an investigation, mark the accounts as disputed, and update the reporting if necessary" (id., ¶ 9). After Plaintiff submitted a dispute in writing (id., ¶ 14), Honda "failed to conduct an investigation, failed to mark the account as disputed, and failed to correct the misleading reporting" (id., ¶ 17). "Plaintiff was later denied an extension of credit based on information contained in [her] TransUnion report, which included the misleading delinquency on the Honda account" (id., ¶ 18), and "[she] has been forced to deal with the aggravation, humiliation, and embarrassment of a low credit score" (id., ¶ 19).

Honda answered the Complaint, "den[ying] all material allegations of wrongdoing" (Docket Entry 4 (the "Answer"), ¶ 1) and asserting (as affirmative defenses) that "[Honda] conducted a reasonable investigation of all credit reporting disputes raised by Plaintiff" (id. at 7) and that "[Honda]'s reporting of Plaintiff's

2

account [wa]s accurate" (id.). The parties thereafter engaged in discovery. (See Docket Entry 13 (Amended Joint Rule 26(f) Report); Text Order dated Apr. 22, 2021 (adopting Amended Joint Rule 26(f) Report).)

The day before the parties' agreed-upon deadline for Plaintiff to seek leave to amend pleadings (see Docket Entry 13 at 4), Honda filed the Motion, arguing that Plaintiff's claim failed as a matter of law (see Docket Entry 16 at 1; see also Docket Entry 17 (supporting memorandum)). Honda attached as exhibits to the Motion (i) a (redacted) 37-page document bearing the TransUnion logo and reflecting, inter alia, information about Plaintiff's automobile account with "American Honda Finance" (Docket Entry 16-1 (the "TransUnion Report") at 3 (all-caps font omitted); see also id. at 2–38), (ii) a (redacted) seven-page document from creditkarma.com indicating that Plaintiff's American Honda Finance account remains closed (see Docket Entry 16-2 (together with the TransUnion Report, the "Reports")), and (iii) a (redacted) copy of the written dispute that Plaintiff submitted to TransUnion on July 27, 2020 (see Docket Entry 16-3 (the "Dispute") at 2–4). Plaintiff opposed the Motion (see Docket Entry 24 (the "Response")) and sought leave to file an amended complaint "if the Court determines that the Complaint is deficient in any way" (id. at 17; see also Docket Entry 25-5 (proposed amended complaint)). Honda replied. (See Docket Entry 27.)

3

**DISCUSSION**

**I. Relevant Legal Standards**

**A. Judgment on the Pleadings**

"[A] party may move for judgment on the pleadings" pursuant to Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") any time "[a]fter the pleadings are closed," as long as it moves "early enough not to delay trial," Fed. R. Civ. P. 12(c). Federal Rule of Civil Procedure 7 defines "pleadings" to include, in pertinent part, "a complaint" and "an answer to a complaint," Fed. R. Civ. P. 7(a)(1), (2). Under Rule 12(c), the Court (i) takes all factual allegations in the Complaint as true, (ii) takes all factual allegations in the Answer "as true only where and to the extent they have not been denied or do not conflict with the [C]omplaint," Alexander v. City of Greensboro, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011) (internal quotation marks omitted), and (iii) "draws all reasonable factual inferences in [] favor [of] the nonmoving part[y]," id. "The test applicable for judgment on the pleadings is whether or not, when viewed in the light most favorable to the party against whom the motion is made, genuine issues of material fact remain or whether the case can be decided as a matter of law." Smith v. McDonald, 562 F. Supp. 829, 842 (M.D.N.C. 1983), aff'd, 737 F.2d 427 (4th Cir. 1984), aff'd, 472 U.S. 479 (1985). Accordingly, "a Rule 12(c) motion tests only the sufficiency of the [C]omplaint and does not resolve the merits of the plaintiff's

4

claims or any disputes of fact." Massey v. Ojaniit, 759 F.3d 343, 353 (4th Cir. 2014) (brackets and internal quotation marks omitted); see also id. at 347 ("Rule 12(c) motions are governed by the same standard as motions brought under [Federal] Rule [of Civil Procedure] 12(b)(6)." (internal quotation marks omitted)).

In connection with the foregoing inquiry, the "[C]ourt cannot consider matters outside the pleadings without converting the motion into one for summary judgment." Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). However, the Court may "consider a 'written instrument' attached as an exhibit to a pleading," id. (quoting Fed. R. Civ. P. 10(c)), "as well as [documents] attached to the motion to dismiss [or motion for judgment on the pleadings], so long as they are integral to the complaint and authentic," id. (first set of brackets in original) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). Beyond those caveats, if "matters outside the pleadings are presented to and not excluded by the [C]ourt, the [Rule 12(c)] motion must be treated as one for summary judgment under [Federal] Rule [of Civil Procedure] 56." Fed. R. Civ. P. 12(d). In that circumstance, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Id. "[T]he term 'reasonable opportunity' requires that all parties be given some indication by the [C]ourt . . . that it is treating the [relevant] motion as a motion for summary judgment, with the consequent right in the

5

opposing party to file counter affidavits or pursue reasonable discovery." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985) (ellipsis in original) (internal quotation marks omitted).

### B. FCRA

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 52 (2007) (citing Pub. L. No. 91-508, § 602, 84 Stat. 1128 (codified as amended at 15 U.S.C. § 1681)). "To this end, FCRA requires [credit reporting agencies, ('CRAs')] to follow procedures in reporting consumer credit information that both 'meet[] the needs of commerce' and are 'fair and equitable to the consumer.'" Saunders v. Branch Banking & Tr. Co., 526 F.3d 142, 147 (4th Cir. 2008) (second set of brackets in original) (quoting 15 U.S.C. § 1681(b)).

FCRA also imposes various duties on "furnishers" of consumer credit information. In that regard, "[Section] 1681s-2(a) . . . requires furnishers to report accurate information to CRAs," Timms v. USAA Fed. Sav. Bank, No. 3:18CV1495, 2020 WL 12618897, at *8 (D.S.C. Aug. 20, 2020) (unpublished), whereas "[Section] 1681s-2(b) . . . requires furnishers to take certain actions upon receipt of a dispute from a CRA," id. Although no private cause of action exists for violations of Section 1681s-2(a), individual consumers may enforce Section 1681s-2(b). See

6

id.; accord Banks v. Stoneybrook Apartment, No. 1:99CV561, 2000 WL 1682979, at *2 (M.D.N.C. June 1, 2000) (unpublished), aff'd, 232 F.3d 888 (table), No. 00-1893, 2000 WL 1578331 (4th Cir. Oct. 19, 2000) (unpublished).

Under Section 1681s-2(b),

> [i]f a consumer notifies a CRA that he disputes the accuracy of an item in his file, FCRA requires the CRA to notify the furnisher of the dispute. Upon receipt of this notice, a furnisher must:
>
> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
> (C) report the results of the investigation to the consumer reporting agency; [and]
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis . . . .

Saunders, 526 F.3d at 148 (brackets and ellipsis in original) (internal citation omitted) (quoting 15 U.S.C. § 1681s-2(b)(1)). Accordingly, a Section 1681s-2(b) claim against a furnisher consists of the following elements: "(1) there is a dispute over inaccurate information on a credit report that was furnished to the credit reporting agency . . . ; (2) the credit reporting agency notified the [furnisher] of the dispute; and (3) [the furnisher] failed to undertake an investigation of the dispute." Harris v. Suntrust Mortg., Inc., No. 12CV378, 2013 WL 1120846, at *5 n.13 (M.D.N.C. Mar. 18, 2013) (unpublished).

7

To satisfy the third element, a furnisher must "conduct a <u>reasonable</u> investigation of [its] records to determine whether the disputed information can be verified." <u>Johnson v. MBNA Am. Bank, NA</u>, 357 F.3d 426, 431 (4th Cir. 2004) (emphasis added). The reasonableness of an investigation depends on "an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the [CRA] as disputed, and the furnisher's other records relating to the disputed account." <u>Daugherty v. Ocwen Loan Servicing, LLC</u>, 701 F. App'x 246, 253 (4th Cir. 2017). "Generally, whether a furnisher conducted a reasonable investigation is a question of fact for the jury." <u>Davenport v. Sallie Mae, Inc.</u>, 124 F. Supp. 3d 574, 581 (D. Md. 2015).

"Although [Section] 1681s-2(b) does not specifically require an inaccuracy in a furnisher's reporting, courts have found that a plaintiff must show furnishings of inaccurate information to state a claim under [Section] 1681s-2(b)." <u>Jarrett v. Experian Info. Sols., Inc.</u>, No. 3:20CV125, 2021 WL 1381132, at *5 (E.D. Va. Apr. 12, 2021) (unpublished) (citing, inter alia, <u>Saunders</u>, 526 F.3d at 149–50).[2] CRAs and furnishers operate under "the same standard of

---

2 In applying that threshold requirement, some courts have described accuracy as a complete defense to a Section 1681s-2(b) claim. See <u>Chiang v. Verizon New Eng., Inc.</u>, 595 F.3d 26, 37–38 (1st Cir. 2010) (explaining that failure to show inaccuracy defeats Section 1681s-2(b) claim against furnisher); <u>Letren v. Trans Union, LLC</u>, No. CV15-3361, 2017 WL 445237, at *7 (D. Md. Feb. 2, 2017) (unpublished) (deeming accuracy complete defense for CRA facing

8

accuracy," Saunders, 526 F.3d at 148 n.3. Under that standard, "a report 'is inaccurate' not only 'when it is "patently incorrect"' but also 'when it is "misleading in such a way and to such an extent that it can be expected to [have an] adverse[]" effect.'" Id. at 148 (brackets in original) (quoting Dalton v. Capital Associated Indus., Inc., 257 F.3d 409, 415 (4th Cir. 2001)). Even "technically accurate information" may qualify as inaccurate if "it creates a misleading impression." Id.

The question of a report's accuracy, like an investigation's reasonableness, normally involves a fact-specific determination. See Price v. Equifax Info. Servs., No. 5:19CV886, 2020 WL 2514885, at *5 (S.D.W. Va. May 15, 2020) (unpublished) ("[W]hether technically accurate information is sufficiently misleading to qualify as inaccurate for purposes of [] FCRA is generally a question to be determined by the trier of fact." (citing Seamans v. Temple Univ., 744 F.3d 853, 865 (3d Cir. 2014), and Dalton, 257 F.3d at 415)). For example, a neighboring court recently denied a furnisher's motion for judgment on the pleadings when it could not

---

inaccurate reporting claim under FCRA), aff'd in part, appeal dismissed in part, 770 F. App'x 95 (4th Cir. 2019); see also Mitchell v. Bayview Loan Servicing, LLC, No. 20-1163, 2021 WL 4148561, at *9 (D. Md. Sept. 13, 2021) (unpublished) ("Because [the furnisher] provided accurate information, the [Section 1681s-2(b)] claim fails."); Hrebal v. Seterus, Inc., 598 B.R. 252, 266 (D. Minn. 2019) ("[R]egardless of an investigation's reasonableness, a furnisher may be entitled to summary judgment if the consumer fails to show actual inaccuracies that a furnisher's objectively reasonable investigation would have been able to discover." (emphasis and internal quotation marks omitted)).

9

determine, as a matter of law and based on the pleadings alone, that "that [the furnisher] accurately reported [the plaintiff] as behind on his loan," Jarrett, 2021 WL 1381132 at *6; see also id. (declining to consider documents attached to furnisher's answer in light of the plaintiff's authenticity-based challenge).

Neighboring courts also have rejected, at the motion-to-dismiss stage, arguments by furnishers regarding the accuracy of reporting historical information on closed accounts. See Slaughter v. Equifax Info. Servs., LLC, No. 4:20CV15, 2020 WL 5200823, at *1-4 (E.D. Va. Aug. 12, 2020) (unpublished) (recommending denial of dismissal motion targeting claim that furnisher inaccurately reported monthly payment on closed account), recommendation adopted, 2020 WL 5121299 (E.D. Va. Aug. 31, 2020) (unpublished); Burns v. Trans Union, LLC, Civ. Action No. 4:18-3120, 2019 WL 3890833, at *4 (D.S.C. Aug. 19, 2019) (unpublished) (denying motion to dismiss when complaint alleged that "furnisher violated [] FCRA by listing monthly payments despite [] claimant's account being closed and charged off"); Short v. Experian Info. Sys., Inc., No. 2:16CV9294, 2017 WL 2296887, at *3-4 (S.D.W. Va. May 25, 2017) (unpublished) (deeming Section 1681s-2(b) allegations sufficient even assuming that no FCRA violation occurs when furnisher "accurately report[s] negative historical information about a paid account"). However, some courts outside the Fourth Circuit have decided, as a matter of law, that reporting historical payment

10

status information about closed accounts qualifies as accurate. See, e.g., Bibbs v. Trans Union LLC, 521 F. Supp. 3d 569, 576–77 (E.D. Pa. 2021) (collecting and summarizing cases), appeal filed, No. 21-1350 (3d Cir. Feb. 24, 2021).

## II. Analysis

As a preliminary matter, Plaintiff and Honda disagree as to the scope of the Court's inquiry at this juncture. Honda has contended that the Court may consider the Reports and the Dispute under the Rule 12(c) rubric "because th[os]e documents are referenced in [the] Complaint and are central to [Plaintiff's] claims" (Docket Entry 17 at 2 n.1) and because "the authenticity of [such] documents is not, and cannot be, disputed, as Plaintiff produced the documents" (id.). According to Plaintiff, the Reports (described by Honda as "credit reports") actually constitute "consumer disclosures" (Docket Entry 24 at 16), which exist outside "[t]he [r]elevant [c]ontext" (id. (emphasis omitted)), i.e. "what information was transmitted to potential lenders" (id. at 17). In reply, Honda has asserted that any distinction between credit reports and consumer disclosures cannot impact the accuracy of "the 'pay status' field showing '60-90 days' past due while the account is also reported as closed with a $0 balance." (Docket Entry 27 at 5; see also id. (indicating that Honda lacks control over "how [payment status] information is displayed").)

11

Both parties have (partially) missed the mark. Although Honda has suggested that the Complaint references both the Reports and the Dispute (see Docket Entry 17 at 2 n.1 (citing Docket Entry 1, ¶¶ 11-17)), the cited portions of the Complaint discuss only the Dispute (see Docket Entry 1, ¶¶ 11-17). More specifically, the Complaint alleges, <u>without reference to any particular document</u>, that Honda inaccurately reported payment status information. (See id.) That allegation does not convert any document containing payment status information into a "pleading" (or an integral part of a pleading), see Columbia, 738 F.3d at 116 (defining pleadings), even if Plaintiff produced such document during discovery. Put another way, Plaintiff's production of the Reports may mitigate authenticity concerns without rendering the Reports "integral to the [C]omplaint," Philips, 572 F.3d at 180.

Analysis of Plaintiff's claim further reveals why the Reports do not qualify as "integral," id. In particular, the Complaint challenges the reasonableness of Honda's investigation and its continued reporting of allegedly inaccurate information. (See Docket Entry 1, ¶¶ 31-33.) As a defense, Honda has characterized its investigation as reasonable and its reporting as accurate. (See Docket Entry 4 at 7.) The Reports, on their face, do not reveal (i) how Honda "conduct[ed] an investigation with respect to the disputed information," 15 U.S.C. § 1681s-2(b)(1)(A), (ii) what information Honda reviewed in connection with that investigation,

12

see 15 U.S.C. § 1681s-2(b)(1)(B), or (iii) how Honda reported the results of that investigation to TransUnion, see 15 U.S.C. § 1681s-2(b)(1)(C). Even assuming that TransUnion presented accurate information in Plaintiff's credit report, that circumstance does not necessarily imply that Honda relayed accurate information in its response to an Automated Credit Dispute Verification ("ACDV")[3] from TransUnion (or otherwise conducted a reasonable investigation into Plaintiff's dispute), especially given that "[Honda] cannot control" (Docket Entry 27 at 5) how TransUnion displays Plaintiff's information in a credit report.

Insofar as Plaintiff has asserted that the pertinent inquiry centers on how CRAs report credit data to potential creditors (see Docket Entry 24 at 15-17), the Court notes that Honda, as a furnisher, must provide accurate information to CRAs. See 15 U.S.C. § 1681s-2(a); see also Williams v. Equifax Info. Servs., LLC, No. 1:20CV1063, 2021 WL 2587973, at *2 (N.D. Ga. Mar. 2, 2021) (unpublished) ("[T]he issue is not the appearance of [the p]laintiff's account information on his credit report, but the way [the furnisher] reported that information to [a CRA]."). The Williams court deemed a furnisher's report to a CRA, which "[the

---

3 "An ACDV is an electronic means by which a CRA may report a consumer dispute to a 'furnisher' of consumer data . . . ." Hrebal, 598 B.R. at 259 n.4. A furnisher's response to an ACDV may bear on whether the furnisher provided accurate information to the CRA. See, e.g., Timms, 2020 WL 12618897, at *1–4, 9–14 (resolving motions for summary judgment after engaging in detailed review of several ACDVs and corresponding responses from furnisher).

13

furnisher] attached . . . to its [dismissal motion]," <u>Williams</u>, 2021 WL 2587973, at *2, central to the plaintiff's complaint and therefore considered it without converting the dismissal motion into one for summary judgment, <u>see</u> <u>id.</u> at *2-3. Here, even if the Court considered the Reports, those documents reveal only how non-party sources, accessed by Plaintiff as a consumer, displayed her credit information. (<u>See</u> Docket Entries 16-1, 16-2.) Accordingly, because Honda has failed to demonstrate that the Reports qualify as integral to the Complaint, those documents warrant no analysis under Rule 12(c).[4]

Plaintiff's above-mentioned request to amend the Complaint (<u>see</u> Docket Entry 24 at 17-19) presents another threshold question. An amended pleading normally supersedes the original pleading and moots any pending defensive motions targeting that pleading. <u>See</u> <u>Young v. City of Mount Ranier</u>, 238 F.3d 567, 572-73 (4th Cir. 2001). However, in making such request via the Response, Plaintiff failed to comply with this Court's Local Rule 7.3(a). <u>See</u> M.D.N.C. LR 7.3(a) ("Each motion shall be set out in a separate [filing]."); <u>see also</u> Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."). Although Plaintiff need not file a brief in support of such request, <u>see</u> M.D.N.C. LR 7.3(j) (exempting motions to amend pleadings from requirement that litigants file briefs with

---

[4] The Court also declines to treat the Motion as one for summary judgment.

14

motions), "tuck[ing] away [the] request in [the R]esponse," Phillips v. Umass Corr. Health, No. 1:18CV974, 2020 WL 128463, at *12 (M.D.N.C. Jan. 10, 2020) (unpublished), deprived Honda of the opportunity to (fully) "brief[] the propriety of granting Plaintiff leave to amend," id.  In that regard, a proper motion to amend would have entitled Honda to file a separate responsive brief, instead of a single reply brief (see Docket Entry 27) both supporting the Motion and opposing Plaintiff's request to amend. See M.D.N.C. LR 7.3(d) (providing word count limits for responsive and reply briefs); M.D.N.C. LR 7.3(f) (specifying deadlines for responsive briefs); M.D.N.C. LR 7.3(h) (same, for reply briefs). For that reason, the Court will deny as procedurally improper Plaintiff's request to amend the Complaint.

Turning to the merits of the Motion, Honda has contended that "reporting historical monthly payment status information on a closed account is not inaccurate and does not violate [] FCRA as a matter of law" (Docket Entry 17 at 4).  In support of that position, Honda has relied on the Reports (see id. at 7–8 (excerpting Docket Entry 16-1 at 2–3); see also id. at 7 ("A simple review of Plaintiff's credit reports in context demonstrates the accuracy of [Honda]'s reporting.")), as well as the line of cases "h[o]ld[ing] that it is not inaccurate or incomplete as a matter of law for a furnisher of information to report historical monthly payment information on a closed account" (id. at 5; see also id. at

15

5-7 (discussing Settles v. Trans Union LLC, No. 3:20CV84, 2020 WL 6900302 (M.D. Tenn. Nov. 24, 2020) (unpublished), and Hernandez v. Trans Union LLC, No. 3:19CV1987, 2020 WL 8368221 (N.D. Fla. Dec. 10, 2020) (unpublished)), 6 n.4 (collecting cases)). For her part, Plaintiff has insisted that the Motion presents a factual question beyond the bounds of Rule 12(c) (see Docket Entry 24 at 9–12) and that Honda, in suggesting otherwise, relied on distinguishable authority (see id. at 12–14).

Honda's arguments fall short. For the reason explained above, the Court disregards Honda's references to the Reports. Absent those references, the sole support for Honda's position derives from the "many courts across the country" (Docket Entry 17 at 5) that have decided the question of accuracy, under FCRA, as a matter of law. Notably, that authority includes neither the United States Court of Appeals for the Fourth Circuit nor any district court in this Circuit (which generally have deemed the question of accuracy, in FCRA cases, ill-suited for pre-discovery resolution, see, e.g., Short, 2017 WL 2296887, at *4 (noting that court "lack[ed ]facts necessary to determine whether [furnisher]'s reporting accurately reflected [] history of [the p]laintiff's account")). (See Docket Entry 17 at 5-7 (relying on unpublished decisions from federal district courts in Georgia, Tennessee, and Florida).)

To the extent those non-precedential decisions constitute persuasive authority, neither Settles nor Hernandez (the two

16

opinions that Honda has discussed in detail) aids Honda's cause. More specifically, both Settles and Hernandez required consideration of materials beyond the complaint and answer. See Settles, 2020 WL 6900302, at *2–3; Hernandez, 2020 WL 8368221, at *2.[5] In both Settles and Hernandez, the respective courts assessed the credit report (or excerpt thereof) in context before discerning no inaccuracy. See Settles, 2020 WL 6900302, at *5 ("Considering the totality of the information reported, the Court finds that the report is neither inaccurate nor materially misleading." (emphasis added)); Hernandez, 2020 WL 8368221, at *3 ("[W]hen the Account is viewed in its entirety, it becomes abundantly clear that it was accurately reported and does not misleading[ly] suggest that the plaintiff is 'still late' on the Account." (emphasis added)).[6]

---

[5] The Settles court, after explaining that the complaint referred to "[the] credit report issued by Trans Union and the results of the investigation issued by Trans Union," Settles, 2020 WL 6900302, at *2, deemed such documents "central to [the p]laintiff's claims," id. The Hernandez court considered a motion for judgment on the pleadings together with a motion for summary judgment and noted, as pertinent background, an excerpt from the plaintiff's credit report (without indicating whether that information appeared in or qualified as a pleading). See Hernandez, 2020 WL 8368221, at *1–2.

[6] The other cases cited by Honda (in a footnote in its initial brief) involved either (i) the analysis of a credit report or investigation report deemed part of the pleadings, see Gross v. Private Nat'l Mortg. Acceptance Co., 512 F. Supp. 3d 423, 425 n.1, 426–27 (E.D.N.Y. 2021) ("If a creditor read the 'Pay Status' entry in isolation, the creditor might conclude that the account was currently past due. But when the creditor read the rest of the entries, the creditor would surely for[]go that conclusion."); Gibson v. Equifax Info. Servs., LLC, No. 5:18CV465, 2019 WL 4731957, at *1–4 (M.D. Ga. July 2, 2019) (unpublished) (granting

17

In contrast, the record here does not support such a determination. Despite acknowledging (in its reply) that the absence of an "actual credit report" frustrates a court's ability to "consider th[at ]report in context" at the motion-to-dismiss stage (Docket Entry 27 at 3 (distinguishing cases cited by Plaintiff)), Honda has failed to provide documentation of "the way [Honda] reported [Plaintiff's credit] information to TransUnion," Williams, 2021 WL 2587973, at *2. Notably, the Complaint, Answer, and Dispute neither reflect how Honda communicated with TransUnion

---

CRA's dismissal motion upon review of reinvestigation results, which reflected monthly payment for closed accounts with $0 balances); Meeks v. Equifax Info. Servs., LLC, No. 1:18CV3666, 2019 WL 1856411, at *2-6 (N.D. Ga. Mar. 4, 2019) (unpublished) (recommending dismissal after consulting CRA's reinvestigation results showing historical monthly payment for account designated "as closed, charged-off, purchased by another lender, and with a $[]0 balance"), recommendation adopted, 2019 WL 1856412 (N.D. Ga. Apr. 23, 2019) (unpublished), or (ii) the application of summary judgment standards, see Baker v. Pinnacle Credit Union, No. 1:19CV3455, 2020 WL 4696713, at *1 (N.D. Ga. Aug. 13, 2020) (unpublished) (rejecting magistrate judge's recommendation and granting furnisher's motion for summary judgment); Marshall v. Robins Fin. Credit Union, No. 5:19CV260, 2020 WL 620575, at *1 (M.D. Ga. Feb. 10, 2020) (unpublished) (converting motion to dismiss into motion for summary judgment); Seay v. Trans Union, LLC, No. 7:18CV204, 2019 WL 4773827, at *1 (M.D. Ga. Sept. 30, 2019) (unpublished) (converting motions to dismiss into motions for summary judgment); Schweitzer v. Equifax Info. Sols. LLC, No. 08-478, 2010 WL 3809987, at *1 (W.D. Pa. Sept. 21, 2010) (unpublished) (granting CRA's motion for summary judgment), aff'd in part and vacated in part, 441 F. App'x 896 (3d Cir. 2011). In other words, "[a]ll of the cases cited by [Honda] in support of its argument that dismissal is appropriate when a furnisher accurately reports an account involved more developed factual records than presently exists in this case," Mosley v. Bank of Am., N.A., Civ. Action No. 20-3065, 2021 WL 4243406, at *4 (D.D.C. Sept. 17, 2021) (unpublished).

18

regarding Plaintiff's payment status nor establish, as a matter of law, a delinquency attached to the pertinent Honda account. (See Docket Entries 1, 4, 16-3.)[7] Although the Court has rejected Plaintiff's effort to amend the Complaint (via the Response), the allegations of the proposed amended complaint highlight considerations that may bear on the accuracy of Honda's reporting (see Docket Entry 25-5, ¶¶ 13-16 (alleging industry standard regarding use of pay status field and impact on "credit scoring algorithm")). See Short, 2017 WL 2296887, at *3-4 (rejecting Rule 12(b)(6) challenge to proposed amended complaint and noting factual question of "whether [furnisher] used [accounting] term . . . in [] manner harmonious with standard usage in [] industry"). Accordingly, the Court will deny the Motion without prejudice to Honda's right to renew its arguments in the context of a motion for summary judgment.

## CONCLUSION

Upon review of the Complaint, the Dispute referenced therein, and the Answer, the Court cannot conclude (as a matter of law) that Honda conducted a reasonable investigation into Plaintiff's dispute or that Honda accurately reported Plaintiff's information to TransUnion.

---

7  The Court notes, however, that the Response suggests that Plaintiff "missed certain monthly payments . . . [on] a Honda auto loan account" (Docket Entry 24 at 7).

19

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 16) is **DENIED**.

This the 4th day of March, 2022.

                                        /s/ L. Patrick Auld
                                            **L. Patrick Auld**
                                    **United States Magistrate Judge**